LOURIE, Circuit Judge.
Cardiac Pacemakers, Inc., Guidant Sales Corporation, Mirowski Family Ventures, LLC, and Anna Mirowski (collectively, “Cardiac” or “appellants”) appeal from the decision of the United States District Court for the Southern District of Indiana granting summary judgment of invalidity of claim 4 of U.S. Patent 4,407,288 (“the '288 patent”). See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 483 F.Supp.2d 734 (S.D.Ind.2007) (“Invalidity Decision”). Cardiac also appeals aspects of the district court’s decision concerning damages. See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 418 F.Supp.2d 1021, 1027-30 (S.D.Ind.2006) (“Damages Decision”). Because the district court erred in concluding in light of our prior mandates that it could find the '288 patent anticipated, we reverse on invalidity. In light of the fact that infringement has already been decided by the district court, we remand the case solely for a determination of damages. We affirm the court’s decision limiting damages to those devices that can be shown to have executed the steps of claim 4 of the '288 patent.
St. Jude Medical, Inc. and Pacesetter, Inc. (collectively, “StJude”) cross-appeal from the district court’s decision permitting damages under 35 U.S.C. § 271(f). See Id. at 1027-30. The en banc court reverses the district court’s determination that 35 U.S.C. § 271(f) applies to method claims and hence permits damages in this case on devices exported where the claimed method is carried out in countries other than the United States (see Section C.2 of this opinion).
BACKGROUND
This patent dispute concerning implantable cardioverter defibrillators (“ICDs”), has been before us on four previous occasions. See Cardiac Pacemakers, Inc. v. St. *1352 Jude Med., Inc., 296 F.3d 1106 (Fed.Cir. 2002); Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 381 F.3d 1371 (Fed.Cir.2004) (“2001 Opinion”); Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 144 Fed.Appx. 106 (Fed.Cir.2005) (“2005 Reassignment Order”); In re Cardiac Pacemakers, Inc., 183 Fed.Appx. 967 (Fed.Cir.2006) (“2006 Writ Order”). Three of our prior decisions, the 2001 Opinion, the 2005 Reassignment Order, and the 2006 Writ Order, are relevant to this appeal.
ICDs are small devices that detect and correct abnormal heart rhythms that can be fatal if left untreated. The ICDs in this case work by administering electrical shocks to the heart, those shocks being calibrated to restore normal heart functioning. Implantable cardiac devices can be programmed to administer different types of electrical shocks, including pacing shocks (which are relatively low power shocks), defibrillation (relatively high power shocks), and cardioversion, the definition of which has been a source of dispute throughout the protracted litigation of this case.
Cardiac owns various patents relating to cardiac defibrillators, including the '288 patent. The '288 patent claims a method of heart stimulation using an implantable heart stimulator that is capable of detecting heart arrhythmias, or irregular heart rhythms, and of being programmed to treat the arrhythmia through either single or multimode operation. Multimode operation allows a heart stimulator to respond to arrhythmias by applying first one type of shock and then, if unsuccessful, administering a second type of shock. Claim 4 of the '288 patent, the only claim at issue on appeal, is dependent on claim 1:
1. A method of heart stimulation using an implantable heart stimulator capable of detecting a plurality of arrhythmias and capable of being programmed to undergo a single or multi-mode operation to treat a detected arrhythmia, corresponding to said mode of operation the method comprising:
(a) determining a heart condition of the heart from among a plurality of conditions of the heart;
(b) selecting at least one mode of operation of the implantable heart stimulator which operation includes a unique sequence of events corresponding to said determined condition;
(c) executing said at least one mode of operation of said implantable heart stimulator thereby to treat said determined heart condition.
4. The method of claim 1, wherein said at least one mode of operation of said implantable heart stimulator includes cardioversion.
The litigation history of this case is complicated and protracted, but for clarity’s sake we will recite the portion of that history that is relevant to this appeal. Cardiac brought an infringement action against St. Jude on November 26, 1996, accusing St. Jude of selling ICDs that infringed a number of Cardiac’s patents. In 2001 the case was tried before a jury. The jury returned a verdict awarding Cardiac $140 million in royalties for infringement of U.S. Patent 4,316,472 (“the '472 patent”). Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., No. IP-96-1718-C, 2002 WL 1801647, **3-4, 2002 U.S Dist. LEXIS 14767, at *7 (S.D.Ind. July 5, 2002). The jury found the '288 patent valid and enforceable, but not infringed by St. Jude’s ICDs. Id. at **2-4, 2002 U.S Dist. LEXIS 14767, at *6-*7. In doing so, the jury rejected St. Jude’s argument that the invention of the '288 patent was obvious in light of various prior art references, in- *1353 eluding U.S. Patent 3,805,795 (“Denniston”) and United Kingdom Patent Application 2,026,870 (“Duggan”). Id. at *117, *120. The jury also rejected St. Jude’s argument that the '288 patent was unenforceable for inequitable conduct.[1] Id. at **3-4, 2002 U.S Dist. LEXIS 14767, at *7.
Following the trial, the district court granted several post-verdict motions that overturned the jury verdict and conditionally granted a new trial on several issues that St. Jude had lost at trial. First, the court granted St. Jude judgment as a matter of law (“JMOL”) on invalidity and non-infringement of the '472 patent, thereby vacating the jury’s $140 million damage award. Id. at *100. Cardiac has not appealed any of the district court’s decisions regarding the '472 patent.
Regarding the '288 patent, which the jury found valid and not infringed, the district court granted St. Jude’s JMOL motions for invalidity due to obviousness and lack of best mode. Id. at *100-*133. The court denied St. Jude’s JMOL motion of unenforceability, in which St. Jude alleged that Cardiac had failed to pay proper maintenance fees. Id. at *133-*143. Finally, the court further denied Cardiac’s motion for a new trial on infringement. Id. at *195 — *196. The court granted a conditional new trial on the obviousness issue and the inequitable conduct issue in the event that the JMOL decision finding the '288 patent obvious was reversed on appeal. Id. at *114, *143.
Following the district court’s post-trial decisions, Cardiac appealed the district court’s grant of St. Jude’s motion for JMOL of invalidity of the '288 patent as well as the court’s rejection of Cardiac’s motion for JMOL of infringement of claim 4 of the '288 patent. On appeal, we reversed on both issues. 200k Opinion, 381 F.3d at 1378-80. Regarding validity, we held that there was “substantial evidence whereby a reasonable jury could have reached the verdict that it would not have been obvious in March 1981 to provide an ICD that includes cardioversion,” and therefore reinstated the jury verdict that the “'288 patent is not invalid for obviousness.” Id. We also found that the district court’s conditional grant of a new trial on obviousness “exceeded the court’s discretionary authority.” Id. at 1380.
Regarding infringement, we reversed the court’s claim construction and therefore vacated the jury’s finding of noninfringement. We held that the district court had erred in finding that the “determining” step of claim 4 was a “step-plus-function” limitation under 35 U.S.C. § 112 ¶ 6 and remanded the case to the district court to modify its claim construction of the “determining” step in accordance with our opinion. Id. at 1382. Lastly, we agreed with St. Jude that our reversal of the district court’s claim construction entitled St. Jude to a “jury determination on the question of infringement.” Id. at 1383. We summarized our holding as follows:
We affirm in part and modify in part the district court’s claim construction, reinstate the jury verdict of validity, and remand for a new trial on infringement and reassessment of damages.
Id. at 1374.
On remand, the case was returned to Judge Hamilton. Cardiac challenged that assignment, claiming that Seventh Circuit Rule 36 required automatic reassignment of a case remanded for a new trial to a new judge. Judge Hamilton ultimately agreed with Cardiac to reassign the case to another judge. He then certified the issue for an interlocutory appeal. St. Jude *1354 appealed the reassignment decision to this court, and we reversed, finding that further assignment to Judge Hamilton would best conserve judicial resources. 2005 Reassignment Order, 144 Fed.Appx. at 106. We also noted that the case had been remanded for “a new trial on literal infringement of one claim of one patent and for any damages determination.” Id. at 107.
With that background in mind, we now turn to the decisions of the district court that are at issue on appeal. After that remand, both sides submitted to the district court proposed claim constructions for the disputed “determining” limitation in claim 4 of the '288 patent, and the district court adopted Cardiac’s definition of “determining” with one minor change (which is not challenged on appeal). Damages Decision, 418 F.Supp.2d at 1027-30. Cardiac also moved for summary judgment on St. Jude’s invalidity and unenforceability defenses, arguing that such defenses were precluded by our 200k Opinion and the mandate rule. Id. at 1031. The district court disagreed and denied the motion. The court found that “[t]he Federal Circuit’s remand left open the possibility of new invalidity and unenforceability defenses.” Id. at 1031. According to the district court, while our 200k Opinion precluded assertion of the same obviousness argument that St. Jude had raised and lost previously, “St. Jude’s other theories of invalidity were not within the scope of the appealed judgment and therefore may be asserted on remand.” Id. at 1032. In arriving at that conclusion, the district court relied on three points. First, the court found that our remand instructions in the 200k Opinion “suggested” that a new claim construction might give rise to new invalidity defenses, particularly with regard to the adequacy of the written description requirement. Id. Second, the court found that because St. Jude had no obligation on appeal to present alternative arguments for invalidity, those alternative arguments were not precluded on remand. Id. at 1032-33. Third, and most importantly, the court found that St. Jude did not abandon or waive its invalidity defenses that became relevant only on remand; in other words, due to the court’s new claim construction of “determining,” certain prior art that was not invalidating under the erroneous claim construction may have become invalidating under the new claim construction. Id. at 1033.
The district court also rejected Cardiac’s motion for summary judgment on St. Jude’s affirmative defense of inequitable conduct. The court found that “all of St. Jude’s arguments concerning unenforceability” could be asserted on remand. Id. The district court found that this court’s mandate “did not even suggest, let alone require,” that the issue of inequitable conduct be precluded from adjudication on remand. Id. at 1034.
Finally, the district court granted in part and denied in part St. Jude’s motion for summary judgment limiting damages. The court granted St. Jude’s motion to limit damages to ICDs that actually performed the claimed steps. Id. at 1040. The court held that because claim 4 is a method claim, only those devices that “can be shown to have executed” the claimed method were to be used in the damages calculation. Id. at 1042. However, the court rejected St. Jude’s motion to limit damages to U.S. sales of ICDs. The court held that, according to Federal Circuit case law regarding 35 U.S.C. § 271(f), Cardiac’s potential damages included the sale of infringing devices supplied from the United States to other countries. Id. at 1042-44.
Following the district court’s rulings on claim construction and the various summary judgment motions, Cardiac petitioned this court for a writ of mandamus *1355 directing the district court to vacate its order allowing St. Jude to assert invalidity and inequitable conduct defenses. We denied the petition. In doing so, we stated:
[W]e repeat that we “remand[ed] for a new trial of infringement and reassessment of damages,” including re-construction by the district court of the “determining” provision in light of our ruling that section 112 ¶ 6 did not apply. We also recognized that a new claim construction may raise directly related new issues, “such as whether the now-asserted scope of the claims is supported by the specification.”
All of the other issues on remand were finally decided, and are not subject to reopening on remand.
2006 Writ Order, 183 Fed.Appx. at 967 (citations omitted) (emphasis added). The case was once more remanded to the district court.
On March 26, 2007, the district court granted Cardiac’s motion for summary judgment of infringement, while also granting St. Jude’s motion for summary judgment of anticipation. Invalidity Decision, 483 F.Supp.2d at 745. As a threshold matter, the district court found that because of the new, broader claim construction, the anticipation defense was, in the words of this court, a “directly related new issue,” and therefore not precluded by our previous decisions. Id. at 738-39 (quoting 2006 Writ Order, 183 FedAppx. at 967). The court then examined the prior art and found that the '288 patent was anticipated by two references that had been presented to the jury: Denniston and Duggan. Id. at 740^15. Final judgment of invalidity was entered by the district court.
Cardiac timely appealed and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).
DISCUSSION
We review the district court’s grant of summary judgment de novo, “applying the same criteria used by the district court in the first instance.” Rothe Dev. Corp. v. Dep’t of Defense, 545 F.3d 1023, 1035 (Fed.Cir.2008) (quoting W.H. Scott Constr. Co. v. City of Jackson, 199 F.3d 206, 211 (5th Cir.1999)). Summary judgment is appropriate “if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c). We review the interpretation of our own mandates de novo. Engel Indus., Inc. v. Lockformer Co., 166 F.3d 1379, 1382 (Fed.Cir.1999).

A. Invalidity

On appeal, Cardiac argues that the district court erred in granting summary judgment of invalidity. Preliminarily, Cardiac argues that invalidity was not at issue on remand because the mandate rule precluded St. Jude’s anticipation defense. Alternatively, Cardiac argues that if we find that anticipation was still at issue on remand, then we should also find that the district court erred in finding that no genuine issues of material fact existed as to whether Duggan and Denniston were anticipating references, particularly with respect to whether Duggan teaches cardioversion and whether Denniston teaches programming.
In response, St. Jude argues that while our 2001 Opinion and the mandate rule bar consideration of obviousness on remand, St. Jude is permitted to bring an anticipation defense. According to St. Jude, our reversal of the “determining” construction in the 2001 Opinion created new validity defenses due to the changed claim scope. St. Jude also claims that the *1356 '288 patent was anticipated by both Denniston and Duggan, as the district court found.
We agree with Cardiac that anticipation was not properly before the district court on remand. In the 2004 Opinion, we clearly stated that the purpose of the remand was “for a new trial of infringement and reassessment of damages.” 2004 Opinion, 381 F.3d at 1374. Furthermore, we explicitly “reinstate[d] the jury verdict of validity.” Id. The mandate rule requires that the district court follow an appellate decree as the law of the case. Sibbald v. United States, 37 U.S. 488, 492, 12 Pet. 488, 9 L.Ed. 1167 (1838). Therefore, according to our explicit instructions, any new trial on remand was limited to an assessment of infringement and a calculation of any damages.
Of course, as St. Jude rightly notes throughout its brief, our 2004 Opinion altered the district court’s claim construction, and in the 2006 Writ Order we left open the possibility that a new claim construction ruling “may raise directly related new issues.” 2006 Writ Order, 183 Fed. Appx. at 967. As one example of a directly related new issue, we suggested that written description may be challenged under a new, broader claim construction. Id. We did not explicitly include or exclude anticipation from the list of possible new issues raised by a new construction of “determining.”
Thus, the question before us now is whether anticipation is a “directly related new issue” in this case, or whether our reinstatement of the jury’s validity verdict precludes raising anticipation on remand. The jury found the claims of the '288 patent nonobvious in light of numerous prior art references, including both Duggan and Denniston. In overturning the jury’s validity verdict, the district court permitted St. Jude to raise anticipation arguments on remand that St. Jude did not raise at trial. The court based its decision on the fact that “St. Jude may have chosen not to pursue some invalidity defenses, including anticipation, at trial,” due to the erroneous claim construction of “determining” used at trial. Damages Decision, 418 F.Supp.2d at 1033. In finding the claims of the '288 patent nonobvious, the jury necessarily reached the conclusion that some element necessary to prove obviousness had not been demonstrated. For St. Jude to succeed in this appeal, that missing element would have to have been the “determining” limitation.
While it is true that a changed claim construction may permit new anticipation arguments, that cannot be the case here because the “determining” limitation never served as a basis for distinguishing the prior art from the '288 patent and is therefore not a “directly related new issue.”
At trial, Cardiac did not dispute that the “determining” step was in the prior art and did not raise that step as a distinguishing feature between the '288 patent and Duggan or Denniston. See Reply Br. of Plaintiffs-Appellants at 12-14, 2004 Opinion (arguing that Duggan and Denniston do not teach cardioversion); Br. of Plaintiffs-Appellants at 21-24, 2004 Opinion (arguing that the jury heard evidence that the prior art did not teach “cardioversion,” “multi-mode operation,” and “programmability”); cf. id. at 22 (noting evidence that the Baker reference does not perform, among other things, the determining step). The evidence of obviousness during the trial primarily focused on whether the prior art taught multi-mode with cardioversion. See Br. for Defendants-Cross Appellants at 7-8, 2004 Opinion (stating that with regard to obviousness, the only disputed limitations were the claimed invention’s ability to perform multimode operation and the use of cardioversion). Duggan and Denniston were *1357 not only known to St. Jude before trial, but both references were presented to the jury. The jury found that those references did not invalidate the patent even though Cardiac did not dispute that the “determining” construction was known in the prior art. Thus, it cannot be said that the jury’s decision hinged on the erroneous construction of that claim. Stated differently, the jury’s verdict of validity could not have depended upon the erroneous construction of “determining” because it was uncontested during trial that that term was present in the prior art.
The initial, erroneous construction of “determining” was appealed by Cardiac in order to challenge the jury’s verdict of noninfringement. While a change in claim construction often may affect a jury’s validity determination, in this case it does not. Therefore, St. Jude cannot now be allowed to claim that its anticipation arguments involving Duggan and Denniston are “directly related” to the change in the construction of “determining,” because the jury’s validity determination, which we reinstated, did not depend upon that erroneous definition. Thus, in light of the jury’s verdict and our previous mandates unique to this case, we reverse the district court’s summary judgment of invalidity and reinstate the jury’s verdict that the '288 patent has not been shown to be invalid.

B. Inequitable Conduct

Cardiac asks this court to instruct the district court that enforceability defenses are precluded from any remand order. According to Cardiac, the mandate rule requires such a determination. St. Jude counters that inequitable conduct is still at issue on remand because of the district court’s explicit ruling that “in the event of a new trial ... the inequitable conduct defense shall be part of the trial.” Cardiac Pacemakers, 2002 U.S. Dist. LEXIS 14767, at *143, 2002 WL 1801647. Because Cardiac failed to appeal that ruling, St. Jude contends, that decision is final.
The district court characterized St. Jude’s inequitable conduct arguments as falling into three broad categories. The first category involved misrepresentations made before the PTO. Damages Decision, 418 F.Supp.2d at 1033-34. Some of those arguments were raised by St. Jude at trial and rejected by the jury. Id. at 1034. Others were raised and abandoned at trial. Id. The second category of arguments involved three patents that are no longer at issue in this case. St. Jude alleges that those patents were asserted by Cardiac even though Cardiac knew that they were invalid. Id. The district court granted Cardiac’s motion for summary judgment on those arguments, and St. Jude did not appeal that decision. Id,
We conclude that St. Jude has waived the first two categories of inequitable conduct arguments. St. Jude either failed to pursue those arguments at trial, thereby waiving the arguments, or failed to appeal the arguments to this court. Id. St. Jude cannot now be heard to raise those arguments again on remand.
A third category of inequitable conduct arguments relates to misrepresentations made by Cardiac’s expert, Dr. Bourland. The jury rejected many of St. Jude’s inequitable conduct arguments based on Dr. Bourland’s conduct, and the district court declined to reverse the jury’s decision. However, due to revelations that came to light after trial, the court found that Dr. Bourland’s conduct entitled St. Jude to a new trial. Cardiac Pacemakers, 2002 U.S. Dist. LEXIS 14767, at *143, 418 F.Supp.2d 1021. In September 2006, the parties filed a stipulation stating that St. Jude would not pursue any defense based in whole or in part on Dr. Bourland’s conduct. Following that stipulation, Cardiac filed a renewed motion for summary *1358 judgment on inequitable conduct. The district court never ruled on Cardiac’s renewed motion because it entered a final judgment on anticipation on March 26, 2007.
With the stipulation removing Dr. Bourland’s conduct as a basis for an inequitable conduct defense, St. Jude cannot now be heard to raise inequitable conduct on remand. Any language from the district court’s opinion indicating otherwise would be an abuse of the court’s discretion to grant a new trial. We therefore reinstate the jury’s verdict of enforceability of the '288 patent and hold that enforceability should not form part of any new trial on remand.

C. Damages

Cardiac argues that the district court erred by limiting damages to those ICDs that actually performed cardioversion during the infringement period. According to Cardiac, St. Jude waived its damages argument by not raising it at trial. Furthermore, Cardiac argues, Stryker Corp. v. Intermedics Orthopedics, Inc., 96 F.3d 1409 (Fed.Cir.1996), and other cases have held that it is appropriate for patentees to recover damages based on sales of products with the mere capability to practice the invention.
St. Jude responds that it is not precluded from arguing for limited damages because the remanded damages assessment was significantly altered from the assessment that occurred at trial. Because Cardiac is now asserting only a method claim, St. Jude contends, any damages claim must be limited accordingly. Furthermore, in a cross-appeal, St. Jude argues that the district court erred in concluding that Cardiac could recover damages for overseas sales of St. Jude’s ICDs under 35 U.S.C. § 271(f).

1. Damages Limited to Devices Performing Claimed Method

We agree with St. Jude that the district court correctly limited damages to those devices that were shown to infringe the '288 patent. As a preliminary matter, we find that St. Jude has not waived its argument to limit damages. The jury was presented with a damages decision regarding two claims of the '288 patent: an apparatus claim that has since been abandoned by Cardiac and the method claim (claim 4) that is at issue on appeal. While both patent claims were at issue during trial, St. Jude would not have benefited if it had moved to limit damages because the damages on the apparatus claims would have covered any sale of an apparatus that could execute the elements of the claims. However, now only a method claim is at issue; thus, St. Jude stands to benefit from limiting damages to devices that actually practice the method. As the district court noted, the purpose of the waiver rule is to prevent a party from arguing on remand what it should have argued at trial or on appeal. Damages Decision, 418 F.Supp.2d at 1035 (citing Tronzo v. Biomet, Inc., 236 F.3d 1342, 1347-48 (Fed.Cir.2001)). St. Jude cannot have been expected to raise at trial an argument that would not have reduced damages until after Cardiac abandoned its apparatus claim on remand.
The district court was also correct in limiting damages to sales of ICDs that performed the steps of the claimed method. Cardiac disputes the district court’s ruling by pointing this court to Stryker, in which we affirmed a district court’s decision awarding damages on sales of an infringing prosthesis, even in cases in which a distal sleeve, a required element of the claim, was not included. See Stryker, 96 F.3d at 1416-17. The holding in Stryker is distinguishable from this case by the type *1359 of damages being sought and the type of patent being asserted. In Stryker, the patentee was seeking lost profits on an apparatus claim. We held, based on the particular facts of that case, that the patentee was entitled to profits on the sale of all devices, with or without the required distal sleeve because the sale of the device robbed the patentee of “the opportunity to make the sale.” Id. at 1417. This was true because the sleeve, while not included in every sale, was available to the surgeon during surgery. Id.
In the present case, however, Cardiac is not seeking lost profits on an apparatus and therefore cannot rely on the reasoning in Stryker. Here, Cardiac seeks royalties on its patented method. “A method claim is directly infringed only by one practicing the patented method.” Joy Tech. v. Flakt, Inc., 6 F.3d 770, 775 (Fed. Cir.1993). Thus, regarding claim 4 of the '288 patent, infringement can only occur in cases in which the patented method is practiced.
In Stryker, the court found that because the entire patented apparatus was “supplied” during surgery, the patent was infringed by any sale of the device. Stryker, 96 F.3d at 1416-17. In this case it cannot be said that St. Jude has somehow “supplied” all of the elements of Cardiac’s patented method through its devices unless those devices actually performed all of the steps required by the claims. “The law is unequivocal that the sale of equipment to perform a process is not a sale of the process.” Joy Tech., 6 F.3d at 773. Therefore, Cardiac can only receive infringement damages on those devices that actually performed the patented method during the relevant infringement period. We thus affirm the district court’s ruling.

2. Section 271(f)

The court hears this section C(2) en banc. The district court, following our decision in Union Carbide Chemicals & Plastics Technology Corp. v. Shell Oil Co., 425 F.3d 1366 (Fed.Cir.2005), found that 35 U.S.C. § 271(f) applied to method claims and that St. Jude’s shipment of ICDs abroad could result in a violation of that section. Damages Decision, 418 F.Supp.2d at 1042-44. On cross-appeal to this court, St. Jude challenged the court’s decision. The panel affirmed the court’s decision on the basis of Union Carbide. Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 303 Fed.Appx. 884 (Fed.Cir.2008). St. Jude filed a petition for rehearing en banc, which we granted, thus vacating the panel decision. Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 315 Fed.Appx. 273 (Fed.Cir.2009). The en banc court heard oral argument on this issue on May 29, 2009. For the reasons stated below, we reverse and hold that Section 271(f) does not cover method claims and is therefore not implicated in this case.[2]

a. Background on 35 U.S.C. § 271(f)

Before analyzing the merits of St. Jude’s cross-appeal, some background on Section 271(f) is in order. In Deepsouth Packing Co. v. Laitram Corp., 406 U.S. 518, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972), the Supreme Court held that a manufacturer who shipped unassembled parts of a patented shrimp deveining machine abroad was not hable for patent infringement. Because “it is not an infringement to make or use a patented product outside of the United States,” the Court held that the shipment of unassembled components of the deveining machine did not constitute patent infringement. Id. at 527, 531, 92 S.Ct. 1700.
*1360 In response to Deepsouth, Congress enacted Section 271(f). See, e.g., Patent Law Amendments of 1984, S.Rep. No. 98-663, pp 2-3 (1984) (describing Section 271(f) as a response to the “Deepsouth decision which interpreted the patent law not to make it infringement where the final assembly and sale is abroad”); see also Microsoft Corp. v. AT & T Corp., 550 U.S. 437, 444 & n. 3, 127 S.Ct. 1746, 167 L.Ed.2d 737 (2007) (AT&T ID (stating that Section 271(f) was enacted with Congress “[fjoeusing its attention on Deepsouth”).
Section 271(f) provides in full as follows:
(1) Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.
(2) Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.
35 U.S.C. § 271(f).[3]
This court first dealt with Section 271(f) in Standard Havens Products, Inc. v. Gencor Industries, Inc., 953 F.2d 1360 (Fed.Cir.1991). Standard Havens involved patent claims directed to methods of producing asphalt compositions. Id. at 1363. We held simply that a “sale to a foreign customer” of an asphalt plant did not implicate the provisions of Section 271(f). Id. at 1372-74. Our opinion on that issue did not elaborate further.
We more fully addressed Section 271(f) in Eolas Technologies, Inc. v. Microsoft Corp., 399 F.3d 1325 (Fed.Cir.2005). In that case, we held that Microsoft could not avoid Section 271(f) liability by exporting golden master disks containing software code that were subsequently copied onto computer hard drives and sold outside of the United States. Id. at 1331, 1341. Eolas involved both a product and a method claim. In holding that Microsoft was liable under Section 271(f), we held that the software code included on Microsoft’s master disks was a “component” of a patented invention under Section 271(f), id. at 1339, and that the relevant “component” referred to a part of the product claim. See id. at 1339 (holding that the “computer readable code claimed in claim 6,” the product claim, was “a part or component of that invention”). We rejected Microsoft’s argument that the term “component” was limited to physical items, id. at 1340, and held that “section 271(f)’s ‘components’ include software code on golden master disks,” id. at 1341. No specific mention *1361 was made in Eolas concerning the relationship between Section 271(f) and the method claims. See id. at 1339 (citing the patent specification, not the claims, as evidence that the patented invention was a software product).
Shortly after Eolas issued, we decided a similar issue in AT & T Corp. v. Microsoft Corp., 414 F.3d 1366 (Fed.Cir.2005) CAT&T I). AT&T I involved a factual scenario similar to that in Eolas: Microsoft exported golden master disks containing software that was covered by a patent held by AT&T. The software, once shipped abroad, was copied onto hard drives and sold to foreign customers. In our holding in AT&T I, we relied on the holding in Eolas that intangible software code was capable of being a component of a patented invention. Id. at 1369. We further held that such software was “supplied” for purposes of Section 271(f) when “a single copy [was sent] abroad with the intent that it be replicated.” Id. at 1370.
In the same year that we decided Eolas and AT&T I, we decided a third case dealing with the scope of Section 271(f). Our discussion of Section 271(f) in NTP, Inc. v. Research in Motion, Ltd. was limited to the question whether infringement liability was somehow proper under Section 271(f) where RIM supplied BlaekBerry handheld devices to customers in the United States, and use of those devices (in concert with a relay of the Blackberry network located in Canada) would infringe NTP’s patented method if all steps were performed in the United States. 418 F.3d 1282, 1321 (Fed.Cir.2005). We held that it was not. In doing so, we held that “[w]hile it is difficult to conceive of how one might supply or cause to be supplied ... the steps of a patented method,” the supply of BlackBerry devices to customers in the United States did not constitute the supply step required by Section 271(f). Id. at 1322.
In 2006, a panel of this court explicitly held that Section 271(f) applied to method claims. In Union Carbide, the court was presented with a case in which a catalyst, which was necessary to perform a patented method for producing ethylene oxide, was exported from the United States. 425 F.3d 1366, 1369 (Fed.Cir.2006). The court held that Section 271(f) was applicable to the exportation of the catalyst and use of the patented method abroad. In doing so, the court referred to the catalyst as the “component” referred to in Section 271(f). It distinguished NTP by noting that the catalyst at issue in Union Carbide was directly supplied to foreign affiliates whereas the device in NTP was sold domestically and then used in a foreign country. Id. at 1380. It found that Eolas, which supported a finding of infringement under Section 271(f), expressly under a product claim and impliedly under a method claim, was more factually analogous and earlier in time than NTP, and therefore governed the case. Id. Indeed, the court considered that the shipment of the chemical catalyst was an even stronger candidate for the application of Section 271(f) than the shipment of master disks in Eolas because, unlike Eolas, Shell used the shipped components directly in its process instead of using copies of the exported components. Id. at 1379. Thus, the court held that “because § 271(f) governs method/process inventions, Shell’s exportation of catalysts may result in liability” under that section. Id. at 1380.
The Supreme Court subsequently examined Section 271(f) when it granted certiorari and reversed our decision in AT&T I. AT&T II, 550 U.S. 437, 127 S.Ct. 1746, 167 L.Ed.2d 737 (2007). The Court held that Microsoft did not supply combinable components of a patented invention when it shipped master disks abroad to be copied. Because the foreign-made copies of Windows that were installed on computers *1362 were supplied “from places outside of the United States,” the Court held that Microsoft had not supplied components from the United States. Id. at 452, 127 S.Ct. 1746. The court reserved judgment on whether “an intangible method or process ... qualifies as a ‘patented invention’ under § 271(f),” but noted that if so, the “combinable components of that invention might be intangible.” Id. at n. 13, 127 S.Ct. 1746. The Court sent a clear message that the territorial limits of patents should not be lightly breached. Id. at 454-56, 127 S.Ct. 1746.

b. Analysis

In construing the terms of Section 271(f), we do so “in accordance with [their] ordinary or natural meaning.” Id. at 449, 127 S.Ct. 1746 (alteration in original) (quoting FDIC v. Meyer, 510 U.S. 471, 476, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)). Section 271(f)(1) provides that one who “supplies ... in or from the United States, all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components” shall be liable as an infringer. 35 U.S.C. § 271(f)(1). Section 271(f)(2) contains similar language.
Cardiac argues that the use of the term “patented invention” in 271(f) indicates Congress’s intent to include all classes of invention within that statute’s reach. Cardiac rightly notes that “invention” is defined in the U.S. Code to include “any new and useful process, machine, manufacture or composition of matter,” 35 U.S.C. § 101, and thus is broad enough to include method patents. However, examination of the statute before us is not quite so simple. While the isolated “patented invention” language in Section 271(f) by itself might seem to extend to all inventions within the definition of “invention,” we cannot disregard all the other language of that section, which, as we shall demonstrate, makes it clear that it does not extend to method patents. We also cannot ignore the context of the statute and its legislative history, which lead us to the same conclusion, which is that Section 271(f) does not encompass method patents.
In interpreting the terms of Section 271(f), it is critical to recall what a “patented invention” consists of when method patents are at issue. We have noted “the distinction between a claim to a product, device, or apparatus, all of which are tangible items, and a claim to a process, which consists of a series of acts or steps.” In re Kollar, 286 F.3d 1326, 1332 (Fed.Cir.2002); see also NTP, 418 F.3d at 1322 (“The invention recited in a method claim is the performance of the recited steps.”). Thus, a component of a tangible product, device, or apparatus is a tangible part of the product, device, or apparatus, whereas a component of a method or process is a step in that method or process. As we demonstrate herein, this fundamental distinction between claims to a product, device, or apparatus on one hand and claims to a process or method on the other, is critical to the meaning of the statute and dooms Cardiac’s argument on this issue.
Cardiac relies on the Supreme Court’s language in Quanta Computer, Inc. v. LG Electronics, Inc., — U.S.-, 128 S.Ct. 2109, 170 L.Ed.2d 996 (2008), in which the Court stated: “Apparatus and method claims may approach each other so nearly that it will be difficult to distinguish the process from the function of the apparatus.” Id. at 2118 (citation and internal quotations omitted). However, the Court’s language throughout the Quanta opinion is focused on the similarities between method and apparatus patents in the unique context of patent exhaustion. See, e.g., id. at 2117-18 (noting that a method may be “embodied” in devices for purposes of a *1363 “sale”); id. (method patents may be “exhausted by the sale of an item”). Moreover, in an exhaustion context, which considers whether a patent owner has been fully compensated when a sale or license of his invention has occurred, it matters little whether the patent involved claims to a product (apparatus) or a method. If a patent owner sells or licenses a product, it is not unreasonable to hold that the patent owner has received his due compensation under the patent, whether it is a product or a method patent. Thus, as the Supreme Court stated, for purposes of exhaustion, it may “be difficult to distinguish the process from the function of the apparatus.” Quanta, 128 S.Ct. at 2118 (citation and internal quotations omitted). The Supreme Court’s statement in an exhaustion context has no application here.
Our precedents draw a clear distinction between method and apparatus claims for purposes of infringement liability, which is what Section 271 is directed to. See, e.g., Joy Tech., 6 F.3d at 773-75 (stating that method claims are infringed only by practicing the steps of the method); NTP, 418 F.3d 1282, 1318 (“[A] patent for a method or process is not infringed unless all steps or stages of the claimed process are utilized.”). Section 271(f) “applies only to ‘such components’ as are combined to form the ‘patented invention’ at issue.” AT&T II, 550 U.S. at 449, 127 S.Ct. 1746 (footnote omitted). “Component” is defined as “a constituent part,” “element,” or “ingredient.” Webster’s Third New International Dictionary of the English Language 466 (1981); see also AT&T II, 550 U.S. at 449 n. 11,127 S.Ct. 1746 (adopting same definition in Section 271© case). As we have seen, the patented invention at issue when a method patent is implicated consists of a “series of acts or steps.” In re Kollar, 286 F.3d at 1332. The elements of a method are the steps that comprise the method. Thus, method patents do have “components,” viz., the steps that comprise the method, and thus they meet that definitional requirement of Section 271©, but the steps are not the physical components used in performance of the method.
Cardiac disagrees that a component of a patented method is a step of that method. Instead, Cardiac urges us to adopt a definition of “component” that would encompass “the apparatus that performed the process.” Appellants’ Br. 15. That position is clearly contrary to the text of Section 271(f). It is not even supported by the lone amicus brief we have received in favor of including method patents within Section 271(f)’s reach. Br. for Ormco Corp. as Amicus Curiae Supporting Application of Section 271© to Method Claims, No. 07-1296,-1347 at 11 (Fed.Cir. Apr. 13, 2009) (“Ormco Br.”) (“[T]he components of a method are the steps or acts that comprise the method.”).[4]
Another subsection of Section 271 further undercuts Cardiac’s proposed definition of “component.” It is a “fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.” Davis v. Mich. Dept, of Treasury, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). Section 271(c) illustrates the contrasting treatment that Section 271 gives to tangible inventions and method inventions and the meaning of the term “component.” Section 271(c) contrasts “a component of a patented machine, manufacture, combination, or composition” with a “material or apparatus for use in practicing a patented process.” 35 U.S.C. § 271(c). Congress clearly believed that a “component” was separate and distinct from a “material or *1364 apparatus for use in practicing a patented process.” Thus, a material or apparatus for use in practicing a patented process is not a component of that process. The components of the process are the steps of the process.
Although such patented methods do have components, as indicated, Section 271(f) further requires that those components be “supplied.” That requirement eliminates method patents from Section 271(f)’s reach. The ordinary meaning of “supply” is to “provide that which is required,” or “to furnish with ... supplies, provisions, or equipment.” Webster’s Third New International Dictionary of the English Language 2297 (1981). These meanings imply the transfer of a physical object. Supplying an intangible step is thus a physical impossibility, a position that not even Cardiac seems to dispute. See Appellants’ Br. 15 (arguing that steps of a patented process, “which conceptually could not be supplied from the United States,” were not the components of the process). As we have noted before, “it is difficult to conceive how one might supply or cause to be supplied all or a substantial portion of the steps in a patented method in the sense contemplated by” Section 271(f). NTP, 418 F.3d at 1322.
One amicus curiae brief has argued that one might supply a physical object that is the result of one of the steps of a patented process and combine that object with the remaining steps abroad. Ormco Br. at 12-14. That argument, however, confuses the result of a method step with the step itself. See id. (arguing that one who “supplies the results of” patented steps meets the requirements of Section 271(f)) (emphasis added). Section 271(f) does not forbid the supplying of products that are the result of steps of the patented method; rather it forbids the supply of the components themselves. 35 U.S.C. § 271(f) (imposing liability on one who “supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention”). Thus, because one cannot supply the step of a method, Section 271(f) cannot apply to method or process patents.
Our holding today is fully consistent with the legislative history of Section 271(f). As discussed above, in enacting Section 271(f), Congress intended to overturn the holding in Deepsouth. AT&T II, 550 U.S. at 457-58, 127 S.Ct. 1746. Deepsouth dealt with an apparatus patent, a shrimp deveining machine, and the exportation of the physical components of that machine. Deepsouth 406 U.S. at 519, 92 S.Ct. 1700. Congress was clearly focused on closing the loophole presented in Deepsouth, viz., that shipping an unassembled patented product abroad for later assembly avoids patent infringement. Congress’s focus on patented products is apparent from an examination of the legislative history. See, e.g., S.Rep. No. OS-OOS at 6, (1984) (stating that Section 271(f) will “prevent copiers from avoiding U.S. patents by shipping overseas the components of a product patented in this country so that assembly of the components will be completed abroad.” (emphasis added)); 130 Cong. Rec. H10,525 (daily ed. Oct. 1 1984) (same). The legislative history of Section 271(f) is almost completely devoid of any reference to the protection of method patents and the Supreme Court has advised us that it is Congress’s right, not the courts’, to extend the statute beyond the Deepsouth problem it was designed to fix. See AT&T II, 550 U.S. at 457-58, 127 S.Ct. 1746 (explaining that Congress designed 271(f) to close the Deepsouth loophole and that another loophole should be left in “Congress’ court”).
Cardiac argues that a single statement by former Commissioner of Patents, Donald Banner, indicates that Congress under *1365 stood “components” to apply also to method patents. In a prepared statement, Mr. Banner stated that Section 271(f) “makes it infringement to supply components of a patented process for final assembly abroad, if supplied for the purpose of avoiding the patent.” S. 1535 — A Bill To Amend Title 35, United States Code, To Increase The Effectiveness Of The Patent Laws And For Other Purposes: Hearing Before The Subcommittee On Patents, Copyrights And Trademarks of the Committee On The Judiciary, United States Senate, 98th Cong. 46 (1984) (prepared statement of Donald W. Banner, President, Intellectual Property Owners, Inc.). Cardiac argues that this statement proves that a method can have components, Appellants’ Br. 17, a statement with which we do not disagree. What we do disagree with is the argument that Section 271(f) encompasses method patents. In any event, the impact of the Banner statement is limited at best. That statement, while apparently reflecting an interested party’s views of the effect of a pending bill, is not persuasive regarding the meaning of the enacted language. A statement by one private proponent of a pending bill in Congress, even if his testimony was that the bill was intended to encompass methods as well as apparatus patents, a matter not entirely clear from its language, cannot override the clear language of the statute and the context in which it was enacted. See McCaughn v. Hershey Chocolate Co., 283 U.S. 488, 493-94, 51 S.Ct. 510, 75 L.Ed. 1183 (1931) (stating that “individual expressions are without weight in the interpretation of a statute”). Certainly in light of the statutory language and the overwhelming evidence of Congress’s focus on patented products, that lone statement cannot carry the day for Cardiac.
Any ambiguity as to Congress’s intent in enacting Section 271(f) is further resolved by the presumption against extraterritoriality. The Supreme Court took a narrow view of Section 271© by stating that the presumption against extraterritoriality still applies to Section 271©, even though that section specifically extends the reach of U.S. patent law in a limited manner. AT&T II, 550 U.S. at 454-56, 127 S.Ct. 1746. In light of the near complete absence of any Congressional intent to protect patented methods under Section 271© and the explicit Congressional purpose of overruling Deepsouth’s holding, the presumption compels us not to extend the reach of Section 271© to method patents.
In sum, the language of Section 271®, its legislative history, and the provision’s place in the overall statutory scheme all support the conclusion that Section 271© does not apply to method patents. We therefore overrule, to the extent that it conflicts with our holding today, our decision in Union Carbide Chemicals & Plastics Technology Corp. v. Shell Oil Co., 425 F.3d 1366 (Fed.Cir.2005), as well as any implication in Eolas or other decisions that Section 271© applies to method patents.
We now turn to the facts of this case. Cardiac alleges that St. Jude violates Section 271© when it ships its ICDs outside of the United States. We disagree. Claim 4 of the '288 patent is comprised of the steps of determining a heart condition, selecting cardioversion as the appropriate therapy, and executing a cardioverting shock. Cardiac does not allege that all of those steps are carried out in the United States with respect to certain of the ICDs. Moreover, it cannot allege that the steps óf the method are supplied, a contradiction in terms. Rather, Cardiac alleges that St. Jude’s shipment of a device that is capable of performing the method is sufficient to fall within the scope of Section 271(f). Although the ICD that St. Jude produces can be used to perform the steps of the method, as we have demonstrated, Section 271® does not apply to method or *1366 process patents. As Section 271(f) does not encompass devices that may be used to practice a patented method, St. Jude is therefore not liable for infringement of claim 4 of the '288 patent under Section 271(f) for ICDs exported abroad.

D. Reassignment

Finally, Cardiac urges us to reassign this case to a different judge on remand. However, there is no evidence of, and Cardiac does not appear to allege, that Judge Hamilton has been partial or biased in any way during the proceedings. We therefore decline to designate a judge to preside over the remand. We see no reason to interfere with the internal operations of the Seventh Circuit, and we leave the determination of assignment on remand to that circuit’s internal rules and procedures.
CONCLUSION
For the foregoing reasons, we reverse the district court’s grant of summary judgment of invalidity of the '288 patent and reinstate the jury verdict that the patent has not been shown to be invalid. We also reinstate the jury’s verdict that the '288 patent is not unenforceable for inequitable conduct and reverse the district court’s grant of a conditional new trial on that issue. We remand to the district court for a determination of damages. We affirm the district court’s rulings limiting damages to instances in which the patented method has been performed. Finally, we reverse the court’s decision that 35 U.S.C. § 271(f) is applicable to this case and hold that St. Jude’s ICDs that practice the method of claim 4 outside the United States do not infringe that claim under Section 271(f).

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

. The jury also rejected St. Jude's argument that the '288 patent failed to comply with the best mode requirement of 35 U.S.C. § 112 ¶ 1. St. Jude has not appealed any decisions relating to 35 U.S.C. § 112.

. The court has received a number of briefs amicus curiae on the Section 271(f) issue that we are reviewing en banc. The court is appreciative of these contributions.

. Our analysis here focuses on 271(f)(1), but is equally applicable to 271(f)(2). While the two paragraphs differ in some respects, neither party argues that the differences are relevant in this case. Indeed, both paragraphs require the "supply” of "components” that are capable of being "combined outside of the United States.” Compare 35 U.S.C. § 271(f)(1) & (2); see also AT&T II, 550 U.S. 437, 454 n. 16, 127 S.Ct. 1746, 167 L.Ed.2d 737. The definition of those terms guides our analysis on this issue.

. Aside from Ormco’s brief, all other amicus briefs we have received support our conclusion that Section 271(f) does not apply to method patents.