## MANUFACTURING COMPANY v. COWING.

The validity and the infringement of letters-patent No. 117,925, granted Aug. 8, 1871, for an improvement in gas-pumps for oil-wells, having been established, — *Held*, that the case being an exceptional one, inasmuch as the market for such pumps was confined to a particular region, and the demand for them was so limited that, although no other species of pump could successfully compete with them, a single manufacturer could easily and with reasonable promptness fill all orders for them, the patentee is entitled to recover the difference between the cost of the material and labor used by the infringer in making the pumps which he sold and the price which he received for them.

APPEAL from the Circuit Court of the United States for the Northern District of New York.

The facts are stated in the opinion of the court.

*Mr. William F. Cogswell* for the appellant.

*Mr. Elisha Foote* for the appellees.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The only questions raised on this appeal relate to the amount which the Goulds' Manufacturing Company is entitled to recover for the infringement of letters-patent No. 117,925, dated Aug. 8, 1871, for an improvement in pumps "specially designed for drawing off the gas from oil-wells and conducting the same to the furnace of the engine." The validity and the infringement of the letters are not disputed here.

After the letters and the infringement were established below, the case was sent to a master to ascertain the damages. He reported that 298 pumps had been manufactured and sold by the defendants, out of which a net profit of $47.71 on each pump had been realized, that being the difference between the cost of the material and labor used in making a pump and the price at which it was sold. Upon this report the court ruled that, as the patent was only for an improvement on an old pump, the profits for which the defendants were accountable must be confined to such as were realized from the manufacture of the patented improvement, and not from the whole pump as improved. For this reason a new reference was ordered to state the account on the proper basis.

The second report was, in its result, substantially the same as the first. The number of pumps made and sold was the same, and the profit on each pump estimated to be $46.46. The mode of calculating the profits was also the same, that is to say, on the second reference as on the first, the defendants were charged with the price at which they sold the pump as a whole, and credited only with the cost of labor and material used in the manufacture. The master on the second reference, however, reported further as follows : —.

" I find as further fact from the evidence that the plaintiffs' pump, with their patented improvement, which they had introduced into the market, virtually controlled the market, and had superseded all the other pumps then in use for pumping gas, and the others were literally driven out of the market, as they could not be sold at the places where the plaintiffs' pump had been introduced. The defendants went into the very market where the plaintiffs' pump had been introduced, and where they had sold, and where plaintiffs were then supplying most of their pumps, and the defendants, in fact, went and employed Wenson, the former agent of the plaintiffs, to sell the pumps for them, and he, from being the plaintiffs' agent in the locality, made very ready sale of the same pumps for the defendants, and had not the defendants interfered in urging the pumps which they manufactured upon this local market the plaintiffs would certainly have had the whole market to themselves, and would, beyond doubt, have secured orders and supplied the demand of the market for the same number of pumps more than they did sell, as the defendants furnished, to wit, 298 pumps. The plaintiffs were, by their agent, in the field furnishing pumps in those oil regions, and would have supplied the market demand had not the defendants intervened and supplied to the market these 298 pumps."

This finding as to the facts is, in its general effect, supported by the evidence. Notwithstanding this, however, the court, still adhering to its holding as to the rule of estimating profits, set aside the report, and inasmuch as the company had, on the second reference, failed to show what had been realized upon the principles of accounting prescribed, a final decree was entered in its favor for nominal damages only and

costs. From that decree this appeal was taken by the company.

The rule applicable to this class of cases was well stated by Mr. Justice Strong, speaking for the whole court, in *Mowry* v. *Whitney*, 14 Wall. 620. The subject-matter of that suit was a patent for an improvement in the process of manufacturing car-wheels, and in respect to the profits resulting to an infringer from the use of the patented process, it was said, p. 651 : " The question to be determined . . . is, what advantage did the defendant derive from using the complainant's invention over what he had in using other processes then open to the public, and adequate to enable him to obtain an equally beneficial result. The fruits of that advantage are his profits." It does not necessarily follow from this that where the patent is for one of the constituent parts, and not for the whole of a machine, the profits are to be confined to what can be made by the manufacture and sale of the patented part separately. · If, without the improvement, a machine adapted to the same uses can be made which will be valuable in the market, and salable, then, as was further said in that case, the inquiry is, " What was the advantage in cost, in skill required, in convenience of operation or marketability," gained by the use of the patented improvement? If the improvement is required to adapt the machine to a particular use, and there is no other way open to the public of supplying the demand for that use, then it is clear the infringer has by his infringement secured the advantage of a market he would not otherwise have had, and that the fruits of this advantage are the entire profits he has made in that market. Such, we think, is this case. Pumps for all ordinary, and many extraordinary, uses were very old; but, in the new developments of business, something was wanted to take the gas from the casing of an oil-well, and conduct it safely to the furnace of the engine. " With that special purpose in view," this inventor took the well-known parts of an ordinary double-action pump, changed some of them slightly in form, added a new device, and produced something which would do what was wanted. While nominally he only made an improvement in pumps, he actually made an improved pump. For ordinary uses the improvement added nothing to

the value of the old pump, but for the new and special pur-
pose in view, the old pump was useless without the improve-
ment.    The testimony shows that there was no market for
pumps adapted to this particular use, except in the oil-produc-
ing regions of Pennsylvania and Canada.    The demand was
limited, as well as local.    Less than a thousand pumps actually
supplied all who wanted them.    But for that particular use no
other pump could at the time be sold.    If the appellant kept
the control of its monopoly under the patent, it alone had the
advantage of this market.    Unless the appellees got the im-
proved pump, they could not become competitors in that field;
and just to the extent they got into the field they drove the
appellant out.    Through their infringement they got the ad-
vantage of selling the pumps that had upon them the patented
improvement.    Without it no such sales would have been
effected.    The fruits of the advantage they gained by their
infringement were, therefore, necessarily the profits they made
on the entire sale.

This is an exceptional case.    A limited locality required a
particular kind of pump, to be used only in that locality for a
special purpose.    The market was not only limited to a par-
ticular locality, but it was unusually limited in demand.    A sin-
gle manufacturer, possessing the facilities the appellant had,
could easily, and with reasonable promptness, fill every order
that was made.    There was no other pump that could success-
fully compete with that controlled by the patent.    Under these
circumstances it is easy to see that what has been the appellees'
gain in this business must necessarily have been the appellant's
loss, and consequently the appellant's damages are to be meas-
ured by the appellees' profits derived from their business in
that special and limited market.    This, as it seems to us, is
the logical result of the rule which has been stated.    By in-
fringing on the appellant's rights, the appellees obtained the
advantage of the increased marketability of their pumps.    The
action of the court below, therefore, limiting the field of in-
quiry as to damages, cannot be sustained.

We cannot agree with the master, however, in his estimate
of the profits made by the appellees from what they have done.
He finds that the pumps sold in the market for eighty dollars

each, while the cost of manufacturing them was only $33.54. It is true there is some evidence to show that pumps could be made for the sum named, but it is clear to our minds that many things were excluded from the estimate which ought to have been included. All the material and labor of men may have been taken into account, but there is nothing for the use of tools, machinery, power, and other facilities employed in the manufacture, and nothing for wastage and expenses of marketing. One of the appellees is reported as testifying that his firm made the pumps for $31.37 each; but this must be an error, because he at the same time stated he could not say that there was any profit at all at the prices for which sales were made. Clearly this could not be, if what only cost the sum named was sold for $80. Annexed to the statement of the testimony of this witness is a detailed estimate of the cost of manufacture, which, without any allowance for general expenses, made the cost of a single pump $91.96. The appellant furnishes some evidence to contradict this estimate, but the bare fact that the pump when finished brought, as is claimed at the shop, $80, shows that the cost must have been much more than the master has reported. Down to the time of this patent the market had been supplied with some device to accomplish what this improvement did. The change in the old pump was not an expensive one. The valves were put outside of the side chambers instead of inside, and the joints had to be carefully fitted. If the old pump only cost as much as is claimed for the new, we cannot believe it would have commanded in the market any such price as the new sold for. We must conclude, therefore, that the cost of production has been much underestimated by the master. The testimony as reported is very unsatisfactory, and we are strongly inclined to think all has not been sent here which was presented. The attention of the parties was evidently directed much more to the rule of estimating the profits than to the detail of the expense of manufacture and sale. Had there not already been two references, we should be inclined to order another. As it is, we have made the best estimate we can from the material furnished in the record, and conclude

that a reasonable allowance for profits will be fifteen dollars on each pump, or $4,470 in all.

The decree will be reversed, and the cause remanded with instructions to sustain the fifth exception to the report of the master, and enter a decree against the appellees for $4,470 and costs; and it is

*So ordered.*