## MAIMIN v. UNION SPECIAL MACH. CO.

(Circuit Court of Appeals, Third Circuit. April 7, 1911.)

No. 7 (1,476).

PATENTS (§ 318*)—INFRINGEMENT—PROFITS RECOVERABLE.

Complainant made and sold under the name of "Twin Needle A" a sewing machine containing a patented combination of elements, including the elements of the combination of an expired patent, together with a thread-controlling device which was new, and which was essential to the identity of the machines sold under such name. Defendant bought up secondhand machines of complainant's make which did not contain the thread-controlling device, rebuilt and made them over to look like new, added such device, placed thereon medallions taken from worn-out machines containing complainant's trade-mark, changed the numbers, and resold them as genuine "Twin Needle A" machines made by complainant. The master found that the thread-controlling device was considered by the trade as essential to fit such machines for the use for which they were bought, and that but for its presence the purchasers would not have bought them. *Held*, that complainant was properly awarded, as profits realized by defendant from the infringement, the entire profits made by him on the machines.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*

Accounting by infringer for profits, see note to Brickill v. Mayor, etc., of City of New York, 50 C. C. A. 8.]

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

Suit in equity by the Union Special Machine Company against Hyman Maimin. From the final decree awarding damages to complainant, defendant appeals. Affirmed.

For opinion below, see 185 Fed. 120.

Hector T. Fenton, for appellant.

Joseph C. Fraley and C. L. Sturtevant, for appellee.

Before GRAY and BUFFINGTON, Circuit Judges, and YOUNG, District Judge.

GRAY, Circuit Judge. This is an appeal by defendant below from a final decree in equity dismissing his exceptions to and confirming a master's report, awarding to the complainant, appellee, the sum of

---

$560, as and for profits adjudged to have accrued to defendant from infringement of complainant's patent for a thread-eyelet device for sewing machines; also the sum of $921, being the whole costs of the reference; and finally, any other record costs of suit. The final decree which was entered February 6, 1911, also awards to complainant the sum of $22.40 for interest on said $560 from June 3, 1910, when the report was filed, to the date of entry of decree appealed from; the total sum thereby adjudged against defendant being the sum of $1,503.40, with $50 additional and any other taxable costs.

The questions of the validity of the patent sued on, and its infringement by the use of the patented thread-eyelet device on two sewing machines only, prior to the filing of the bill, were disposed of by the interlocutory decree entered July 6, 1908. C. C., 161 Fed. 748, and affirmed in C. C. A., 165 Fed. 440, 91 C. C. A. 384. There was no proof in the record, prior thereto, of any infringement occurring after suit brought, hence the interlocutory decree contained a reference to a master to inquire (1) whether defendant had committed any acts of infringement after the filing of the bill, and (2) if so, to ascertain and report what profits had accrued to defendant from such infringement, and to assess the damages, if any, complainant had sustained thereby. Complainant elected to recover defendant's profits, as such; hence, as urged by complainant's counsel, the law of the proceeding is that which governs the ascertainment of profits and does not depend upon any of the decisions which relate to the question of complainant's damages.

The master found and reported that (1) during the period of four years covered by the inquiry defendant had unlawfully applied the patented thread-eyelet device to 38 secondhand sewing machines; (2) that he had sold these 38 machines at a net profit, for the entire machine, of $560 in the aggregate; (3) that the complainant was entitled to recover the whole of this profit; and (4) that defendant should pay the whole cost ($921) of the reference.

The appellant has not included in the transcript any of the evidence before the master, the record comprising the master's report, the exceptions thereto, the opinion of the court below overruling the exceptions and affirming the master's award, the patent in suit, No. 493,-461, dated March 14, 1893, known as the "Woodward" patent, for a thread-controlling device for sewing machines, and the "Muther" patent, No. 344,493, dated June 29, 1886, for an improved sewing machine.

The specification of the patent in suit for the thread-controlling device states that the invention thereof is shown as applied to the machine illustrated in the "Muther" patent of 1886, although not to be limited in this respect as it may be applied to other kinds of machines. Complainant owned the "Muther" patent, No. 344,493, of June 29, 1886 (which expired June 29, 1903). This patent was for a double or twin needle sewing machine. Prior to the making of the invention by Woodward of the patent in suit, No. 493,461, complainant had made about 200 machines under the earlier "Muther" patent, of the double or twin needle type; but since the year 1891, the date of the applica-

tion for the patent in suit, of which complainant was the assignee, it has built and sold the machine in question under the designation of "Twin Needle A Machines," and every such machine made and sold by the complainant since that date has been equipped with the patented combination. The purpose of the invention, as stated in the specification of this patent, is to afford a peculiar control of the thread during the sewing operation. The claims are for combinations of which the main frame, needle bar, and needle arm, are elements, the remaining elements being certain eyelets arranged in a peculiar and specific relation to these stitch-forming members, whereby the correlated movements of the stitch-forming devices and the eyelets pull off and take up the thread at desired intervals in the formation of each stitch. The period covered by the accounting was from November 14, 1904, down to the entry of the interlocutory decree, when the injunction issued, viz., June 6, 1908, more than 13 years after the adoption and exclusive use by the complainant of the patented combination known as "Twin Needle A Machines."

As the transcript does not contain any of the evidence before the master, except as the same may be quoted in the master's report, his findings of fact, unless inconsistent with the evidence, as quoted by him, must be taken as conclusive.

A careful examination of the report made by the master constrains us to agree with the learned judge of the court below in saying:

"The master has made an admirable report, justifying his conclusions by reference to the testimony and correctly apprehending and applying the equitable principles involved."

Turning, then, to the master's report, we find the following specific findings of fact, as summarized in the brief of the appellee, and as to which there are no assignments of error:

"(1) The defendant never built a machine, infringing or otherwise, as a complete act, so far as this accounting is concerned.

"(2) The defendant never sold any of the machines set forth on his transcript of sales book as though they were of his own manufacture, or of independent manufacture, but always as and for the complainant's genuine 'Twin Needle A' machines.

"(3) A course of dealing on the part of the defendant as follows: Buying up secondhand machines which he knew to be of the complainant's make, some of which did, while others did not, embody the patented improvement, he rebuilt or repaired or restored these machines to an apparently new condition by ripping them out and sometimes sending the parts to japanners that they might be put into lye or acid and thereafter rejapanned or renickled. Complainant's brass medallion, or trade-mark, taken from other machines, broken too badly to repair, was placed on the reassembled machines, which, changed from one gauge to another and from one class to another and renumbered in the effort to make the new numbers correspond with complainant's regular class numbers for that particular type of machines, would look like new machines. Then defendant resold them specifically, as complainant's own machines and under complainant's name."

The master then finds that 36 machines were thus converted by the defendant's embodying therein the patented combination, which they theretofore lacked (not being originally of the class which had contained it), and sold them as and for the complainant's genuine "Twin Needle A" machines.

The findings of fact then continue:

"It is very clear from Crowell's and McNeil's testimony, as well as from other evidence in the cause, that the trade, which included customers both of the complainant and of the defendant, considered the thread-controlling device of the patent in suit, in which stitch-forming elements of an expired patent are present, was required to adapt sewing machines to the particular work for which complainant's Twin Needle A machines were used. And it is further evident that there was no way open to the defendant of supplying the demand for that use, to wit, sewing lace on knit underwear, ornamental stitching on shoes and skirts, etc., save by complainant's 'Twin Needle A' machines."

The report further continues:

"Sixth Finding of Fact. The thread-controlling device of the patent in suit was, during all the period covered by the infringement and for many years prior thereto, essential to the identity of the complainant's 'Twin Needle A' machine.

"Seventh Finding of Fact. The trade knew the various characteristics of machines of complainant's make and when purchasers wanted a 'Twin Needle A' machine of complainant's make, 'it was (to use the language of Elizabeth v. Pavement Company, supra [97 U. S. 126, 24 L. Ed. 1000]) this thing, and not another, that the people wanted and required.'

"Owing to the trade's familiarity with the various characteristics of the complainant's machines, it seems to the master reasonably certain, that but for the presence of the patented feature, upon the machines known as 'Twin Needle A' machines, the defendant would not have been able to sell these machines as and for complainant's, i. e., Union Special machines, because, as stated by complainant's counsel, 'irrespective of the mechanical value of the appliance, its absence would have destroyed the identity of the goods and enabled the purchaser to see that they were not what they professed to be.'

"The conclusion that the sale of the machines in question by the defendant is reasonably attributable to the presence of the patented feature as an element of identity is not affected by those findings of fact requested by defendant's counsel which the master affirms at the end of his report, nor by reason of the arguments based thereon.

"The master having found that the defendant realized a net profit of five hundred and sixty dollars ($560) from the sale of these 36 machines, awarded the entire profits to the complainant upon the specific ground that the sales would not have been made but for the presence of the infringing combination.

"No question arises under the assignments of error, as to the correctness of the sum thus ascertained to constitute the defendant's profits, the only point being whether the complainant is entitled to recover the whole amount."

This state of facts is unique, and complainant's equities must be determined with reference thereto. It is not necessary to dwell upon the moral delinquency involved by the purchase of old, secondhand machines, some with and some without the device characterizing the patent in suit, taking them apart, sending the parts to japanners to be rejapanned or renickled, reassembling the parts so as to change the machine from one gauge to another and from one class to another, taking brass medallions from other machines broken too badly for repair and placing them upon the machines thus made up, renumbering them, in the effort to make them correspond with complainant's regular class numbers for that particular type of machine, so that they would look like new machines, and selling them specifically as complainant's own machines and under complainant's name. It is only necessary to observe that these are findings of fact unassailed by any assignments of

error, and being facts, they render the infringement by the defendant, as found by the master, one of a peculiarly aggravated character.

We turn, therefore, from the undisputed facts establishing the infringement, after the filing of the bill, to the question, whether the master properly apprehended the law applicable to these facts in determining the profits for which the defendant was liable by reason of his infringement.

The assignments of error relied upon by the appellant at the argument, all refer to the propriety of the action of the court below in affirming the master's finding, that complainant was entitled to the entire profits shown to have been realized by him on the sale of the 38 machines, as to which infringement was found.

The general rule relied upon by the appellant in regard to the recovery of profits in infringement cases is that quoted from Westinghouse v. New York Air Brake Co. (C. C. A., Second Circuit) 140 Fed. 545, 549, 72 C. C. A. 61, 65 as follows:

"The general rule governing recoveries in infringement cases is stated, quoting Judge Blatchford, in Garretson v. Clark, 15 Blatchf. 70 [Fed. Cas. No. 5248], affirmed 111 U. S. 120 [4 Sup. Ct. 291, 28 L. Ed. 371], in the following language: The patentee must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features; and such evidence must be reliable and tangible and not conjectural or speculative; or he must show by equally reliable and satisfactory evidence that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine as a marketable article is properly and legally attributed thereto."

But, in stating this rule, the court called attention to circumstances which may except a case from its application, as where the "profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributed thereto" (i. e., to the patented feature). There are many cases in which this rule is affirmed, and there is no controversy as to its propriety. The only questions that arise are as to its applicability to the peculiar circumstances of a given case.

In Cowing v. Manufacturing Co., 105 U. S. 253, 26 L. Ed. 987, the Supreme Court say:

"If the improvement is required to adapt the machine to a particular use, and there is no other way open to the public for supplying the demand for that use, then it is clear that the infringer has, by his infringement, secured the advantage of a market he would not otherwise have had, and that the fruits of this advantage are the entire profits he has made in that market."

The clear enunciation of the rule, and its exception, made in these two cases, render it unnecessary to examine the numerous cases cited by the appellant and appellee as bearing upon the question at issue. As might be expected, the opinions all depend upon the special facts of the cases in which the decisions are rendered. In this case, we are confined to the facts as found by the master, and these findings must control our decision. The important facts, as thus found, are two, viz.:

"It is very clear from Crowell and McNeil's testimony, as well as from other evidence in the cause, that the trade, which included customers, both

of the complainant and of the defendant, considered the thread-controlling device of the patent in suit, in which stitch-forming elements of an expired patent are present, was required to adapt sewing machines to the particular work for which complainant's Twin Needle A machines were used. And it is further evident that there was no way open to the defendant of supplying the demand for that use, to wit, sewing lace on knit underwear, ornamental stitching on shoes and skirts, etc., save by complainant's 'Twin Needle A' machines." (Transcript, p. 26.)

The patent in suit was for a combination, and it was this combination, identified by the thread-controlling device and known to the trade as the "Twin Needle A" machine, that was sold by defendant to the trade in the matter and under the circumstances set forth in the findings of fact. The defendant offered no evidence whatever, and in administering the equities of the case, that fact is to be taken into consideration. There is no reason why, under such circumstances, the complainant should make out more than a strong prima facie case— one sufficient to shift the burden of proof from the complainant to the defendant. In the present case, the court is of opinion that it would have been inequitable to have required from the complainant a larger measure of proof than was adduced. Its weight, too, was such that, to have overcome it, would have required positive and strong proof from the defendant. The master's report, and the opinion of the court below in affirming it, render it unnecessary to elaborate the discussion of the points raised by the able counsel who appeared for the appellant.

The objection to decreeing costs against the defendant, of course, fails, in consequence of the view taken of the principal question. We cannot see that the protraction of the proceedings or the amount of the costs was due to any abuse of the opportunity given to complainant to produce its evidence. The master's report, too, abundantly justifies his finding in this respect. His report has been confirmed, and there is no reason why interest should not accrue from the date thereof.

The decree of the court below is affirmed.