WALLACH, Circuit Judge,
dissenting-in-part.
I agree with the majority’s holdings with respect to standing, infringement, and willfulness. However, in an effort to respect the presumption against the extraterritorial application of United States law, the majority erroneously declines to consider WesternGeco L.L.C.’s (“WesternGeco”) lost foreign sales when determining damages for infringement under 35 U.S.C. § 271(f) (2012). Because, under this court’s precedents and those of the United States Supreme Court, the patent statute requires consideration of such sales as part of the damages calculation, I respectfully dissent.
*1355 It is beyond question that patent rights granted by the United States are geographically limited. As the Supreme Court long ago explained, “[t]he power ... granted [by the Constitution to promote the progress of ... useful arts] is domestic in its character, and necessarily confined within the limits of the United States.” Brown v. Duchesne, 60 U.S. (19 How.) 183, 195, 15 L.Ed. 595 (1856); see also Deepsouth Packing Co. v. Laitram Corp., 406 U.S. 518, 531, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972) (“Our patent system makes no claim to extraterritorial effect; ‘these acts of Congress do not, and were not intended to, operate beyond the limits of the United States’; and we correspondingly reject the claims of others to such control over our markets.” (quoting Duchesne, 60 U.S. at 189)), superseded in part by statute, Patent Law Amendments Act of 1984, Pub.L. No. 98-622, 98 Stat. 3383.
Consistent with this approach, Congress has conferred on patentees “the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States.” 35 U.S.C. § 154(a)(1) (emphasis added). Although “[t]he presumption that United States law governs domestically but does not rule the world” is not unique to the patent context, it “applies with particular force in patent law.” Microsoft Corp. v. AT & T Corp., 550 U.S. 437, 454-55, 127 S.Ct. 1746, 167 L.Ed.2d 737 (2007).
Nevertheless, the limited geographic reach of United States patent law does not mean activities occurring outside the United States are categorically disregarded when determining issues of patent infringement. For example, 35 U.S.C. § 271(g) imposes liability based upon an underlying foreign use of a patented process, if the product made by that process is imported into the United States. Similarly, and relevant to the present matter, by enacting § 271(f) Congress imposed liability on those supplying from the United States components of a patented invention “in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.” 35 U.S.C. § 271(f)(1) (emphasis added).
The Supreme Court has described § 271(f) as “an exception to the general rule that our patent law does not apply extraterritorially.” Microsoft, 550 U.S. at 442, 127 S.Ct. 1746; see also Limelight Networks, Inc. v. Akamai Techs., Inc., — U.S. -, 134 S.Ct. 2111, 2118, 189 L.Ed.2d 52 (2014) (Section 271(f)(1) “illustrates [that] when Congress wishes to impose liability for inducing activity that does not itself constitute direct infringement, it knows precisely how to do so.”); Promega Corp. v. Life Techs. Corp., 773 F.3d 1338, 1351 (Fed.Cir.2014) (“Under 35 U.S.C. § 271(f)(1), a party may infringe a patent based on its participation in activity that occurs both inside and outside the United States.”) (emphasis added); Power Integrations, Inc. v. Fairchild Semiconductor Int’l, Inc., 711 F.3d 1348, 1371 (Fed.Cir.2013) (“[I]ndirect infringement, which can encompass conduct occurring elsewhere, requires underlying direct infringement in the United States.”) (emphasis added) (citations omitted).
The relevance of foreign activities is not limited to the underlying issue of liability for infringement, but also relates to the associated issue of damages. It is on the issue of damages that the majority errs.
In general, a patentee is entitled to full compensatory damages where infringement is found. Gen. Motors Corp. v. Devex Corp., 461 U.S. 648, 654-55, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983) (By enacting § 284, “Congress sought to ensure that the patent owner would in fact receive full compensation for ‘any damages’ he suf *1356 fered as a result of the infringement.”) (citation omitted); Carborundum Co. v. Molten Metal Equip. Innovations, Inc., 72 F.3d 872, 881 (Fed.Cir.1995) (“The primary purpose of compensatory damages is to return the patent owner to the financial position he would have occupied but for the infringement.”); H.R.Rep. No. 1587, 79th Cong., 2d Sess. (1946) (“The object of the bill is to make the basis of recovery in patent infringement suits general damages, that is, any damages the complainant can prove_”) (emphasis added). This general approach is rooted in the patent statute, which provides: “Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty.” 35 U.S.C. § 284 (emphasis added). Section 284 is a particular variation of the more general principle that, “ ‘when a wrong has been done, and the law gives a remedy,’ ” “ ‘[t]he injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed.’ ” Albemarle Paper Co. v. Moody, 422 U.S. 405, 418-19, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (quoting Wicker v. Hoppock, 73 U.S. (6 Wall.) 94, 99, 18 L.Ed. 752 (1867)).
These general principles of full compensation, of course, do not directly address the question of whether foreign activities may be considered when calculating such compensation. The Supreme Court, however, has answered this question in the affirmative, looking to non-infringing foreign sales to calculate lost profits where the patented product is manufactured in the United .States. For example, in Goulds’ Manufacturing Co. v. Cowing, the defendant manufactured 298 pumps “specially designed for drawing off the gas from oil-wells,” for which “there was no market ... except in the oil-producing regions of Pennsylvania and Canada.” 105 U.S. 253, 254-55, 26 L.Ed. 987 (1881) (internal quotation marks omitted). Without excluding the pumps sold in Canada, the Supreme Court found “a reasonable allowance for profits will be fifteen dollars on each pump, or $4,470 [i.e., 298 multiplied by $15 equals $4,470] in all.” Id. at 258. The Court thus relied in part on foreign sales to calculate lost profits, explaining the appellant “could easily, and with reasonable promptness, [have filled] every order that was made.” Id. at 256.
In Dowagiac Manufacturing Co. v. Minnesota Moline Plow Co., the Court reviewed “an accounting of profits and an assessment of damages resulting from the infringement of a patent granted ... for certain new and useful improvements in grain drills, commonly known as shoe drills.” 235 U.S. 641, 642-43, 35 S.Ct. 221, 59 L.Ed. 398 (1915) (internal quotation marks omitted). The defendants included wholesale dealers who purchased from manufacturers (who also infringed the patent). Id. at 643, 35 S.Ct. 221. Some of the drills were sold in Canada by the defendants. Id. at 650, 35 S.Ct. 221. The Court held the plaintiff was unable to recover “either profits or damages” as to these sales, specifically distinguishing Goulds’ on the basis that “while [the infringing drills] were made in the United States, they were not made by the defendants.” Id. By implication, had the defendants manufactured within the United States the infringing articles that were the subject of the foreign sales, those sales could have been used in the calculation of profits and therefore damages.
Consistent with Supreme Court precedent, this court has previously considered lost foreign sales to inform patent damages calculations. In Railroad Dynamics, Inc. v. A. Stucki Co., the district court awarded $2,182,986 in damages based upon 52,183.5 infringing carsets. multiplied by a royalty of $35 per carset, plus 6% com *1357 pound interest. 727 F.2d 1506, 1510 n. 1 (Fed.Cir.1984). In upholding the award, this court noted:
The award includes royalties for 1,671 carsets sold to foreign customers.... When it made the 1,671 carsets in this country, it infringed.... Whether those carsets were sold in the U.S. or elsewhere is therefore irrelevant, and no error occurred in including those carsets among the infringing products on which royalty was due.
Id. at 1519 (emphasis added).
The use of non-infringing foreign sales, following infringing domestic manufacture, as part of the base on which royalties or lost profits are calculated is only one example of reliance on non-infringing activity to arrive at an appropriate damages figure. Where method patents are involved, non-infringing domestic sales of products resulting from domestic infringement of the patent have been held relevant to the damages calculation. In State Industries, Inc. v. Mor-Flo Industries, Inc., for example, the plaintiff held a patent on “a method of insulating the tank of a water heater by using polyurethane foam.” 883 F.2d 1573, 1575 (Fed.Cir.1989). “The district court awarded [the plaintiff] its incremental profit on [the non-infringing] foam-insulated gas water heaters reflecting the percentage of sales revenue [the plaintiff] lost because of [the defendant’s] infringement that would have been its profit,” and this court affirmed. Id. at 1579-80; see also Soverain Software LLC v. J.C. Penney Corp., 899 F.Supp.2d 574, 583 (E.D.Tex.2012) (upholding a damages calculation that relied on “the value of [non-infringing] products sold via the infringing websites as the royalty base,” considering in particular “the profit earned on these [non-infringing] products”), rev’d on other grounds, 778 F.3d 1311 (Fed.Cir.2015). Similarly, where a patented device is used to manufacture unpatented products that are later sold, the non-infringing sales can be used to calculate lost profits or reasonable royalties. See Minco, Inc. v. Combustion Eng’g, Inc., 95 F.3d 1109, 1118 (Fed.Cir.1996) (“In awarding both lost profits and a reasonable royalty, the trial court used the sale of [non-infringing] fused silica [produced using a patented kiln] as the baseline for measuring damages.”).
In this case, the foreign sales of unpat-ented seismic surveys were made not by defendant-appellant ION Geophysical Corporation (“ION”), but by its customers. Maj. Op. at 1343-44, 1349. WesternGeco’s lost profits might therefore be distinguished from those at issue in Goulds’, Dowagiac, and Railroad Dynamics on two separate bases: first, the foreign sales were not of a patented product but of an unpatented service in which a patent-practicing device was used; and second, the foreign sales in the present matter were not made by the defendant.[1]
With respect to the first difference, this court has previously allowed recovery of lost profits based on the recognition that “the economic value of a patent may be greater than the value of the sales of the patented part alone.” King Instruments Corp. v. Perego, 65 F.3d 941, 950 n. 4 (Fed.Cir.1995). For example, under the *1358 doctrine of “convoyed sales,” a patentee may recover lost profits based on lost sales of unpatented products if they are “sufficiently related to the patented product.” Warsaw Orthopedic, Inc. v. NuVasive, Inc., 778 F.3d 1365, 1375 (Fed.Cir.2015). Similarly, “when claims are drawn to an individual component of a multi-component product” a patentee may recover “damages based on the entire market value of the accused product” so long as “the patented feature creates the basis for customer demand or substantially creates the value of the component parts.” VirnetX, Inc. v. Cisco Sys., Inc., 767 F.3d 1308, 1326 (Fed.Cir.2014) (internal quotation marks and citation omitted); see also Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co., 225 U.S. 604, 615, 32 S.Ct. 691, 56 L.Ed. 1222 (1912) (Upon a sufficient showing, a patentee may recover “the profits and damages ... on the whole machine” if “the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.”) (internal quotation marks and citation omitted).
Although discussions of convoyed sales and the entire market value rule are generally addressed to products, there is no statutory or doctrinal reason to exclude functionally related services, as this court has acknowledged. See State Contracting & Eng’g Corp. v. Condotte Am., Inc., 346 F.3d 1057, 1074 (Fed.Cir.2003) (quoting with approval a jury instruction that “if ... an entire construction job is functionally a part of the patented inventions used on the job, then ... lost profits” may be awarded “for that entire construction job”). Moreover, the sale of the patented and unpatented products or services need not occur simultaneously. See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1333 (Fed.Cir.2009) (Whether patented and unpatented products are sold together or in separate transactions “is a distinction without a difference.”); see also Carborundum, 72 F.3d at 881-82 (affirming the district court’s holding that the patentee was “clearly entitled to lost profits on all [unpatented] spare parts sales,” and finding, absent an injunction, it would have been entitled to lost profits on “future lost sales of repair parts”). Here, where it appears WesternGeco “could [have] easily, and with reasonable promptness, fill[ed] every order that was made” for marine surveys, Goulds’, 105 U.S. at 256, where the patent-practicing devices “were made in the United States” and were made “by the defendants,” Dowagiac, 235 U.S. at 650, 35 S.Ct. 221, and where “the patented feature creates the basis for customer demand” of the marine surveys, VirnetX, 767 F.3d at 1326, recovery should not be precluded.
With respect to the second difference— that ION did not itself make the downstream sales — there is no reason to allow ION to escape liability for lost profits simply based upon the business model it chose to employ. Under § 284, damages are based not on the infringer’s profits but on harm suffered by the patentee. See Robert Bosch, LLC v. Pylon Mfg. Corp., 719 F.3d 1305, 1315-16 (Fed.Cir.2013). In this case, damages to WesternGeeo are the same whether ION competes directly or indirectly. Moreover, had ION chosen to compete against WesternGeeo directly by manufacturing components in the United States, assembling them abroad, and then underbidding WesternGeeo to win and perform seismic survey contracts, there would be no sales of patent-practicing devices (or components thereof) on which to base a reasonable royalty. This case would then resemble Mineo in that “[b]oth [the defendant] and [the patentee] used the invention to compete in [the same] market.” Minco, 95 F.3d at 1118. That is, Mineo upheld a calculation of lost profits based on a downstream, non-infringing sale of something *1359 other than the patented product. The court should do so here.[2]
This court’s en banc decision in Cardiac Pacemakers, cited by ION in support of its argument that extraterritorial sales cannot be considered, is not contrary. See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 576 F.3d 1348, 1362 (Fed.Cir.2009) (en banc). In that case, this court “[held] that Section 271(f) does not cover method claims.” Id. at 1359. The export of non-infringing implantable cardioverter defibrillators that were then used abroad to practice a patented method could not give rise to liability under § 271(f) because “a component of a method or process is a step in that method or process,” id. at 1362, but “one cannot supply the step of a method,” id. at 1364. In simple terms, Cardiac Pacemakers held that because method claims are intangible, they cannot be exported (“supplie[d]”) within the meaning of § 271(f). The point of law with respect to infringement under § 271(f) in Cardiac Pacemakers, however, is inapposite to the issue of damages the court now decides. Unlike the defendant in Cardiac Pacemakers, who shipped non-infringing implantable cardioverter defibrillators, there is no question that ION shipped components of a patented invention for combination abroad and that infringement liability under § 271(f) is proper. See Maj. Op. at 1347-48.
Most significantly, this court’s decision in Power Integrations does not support the majority’s view of damages. It is true that case stated damages for infringement under § 271(a) cannot be based on foreign sales simply “because those foreign sales were the direct, foreseeable result of ... domestic infringement.” See Power Integrations, 711 F.3d at 1371. Read in isolation, this statement is inconsistent with Goulds’, Dowagiac, and Railroad Dynamics.
However, despite its use of the word “direct,” the court in Power Integrations was clearly concerned with the sufficiency of the connection between the foreign activity and the domestic infringement. Power Integrations explained the plaintiffs had cited no case law supporting the use of “sales consummated in foreign markets, regardless of any connection to infringing activity in the United States,” when calculating damages. Id. at 1371 (emphasis added). It noted the “estimate [of the plaintiffs expert witness] of $30 million in damages was not rooted in [the defendant’s ] activity in the United States.” Id. *1360 at 1372 (emphasis added) (internal quotation marks and citation omitted). Similarly, ' the district court decision expressed concern that the “estimate [of the plaintiffs expert witness] of $30 million in damages was not related to parts that were manufactured, used, or sold in the United States by [the defendant].” Power Integrations, Inc. v. Fairchild Semiconductor Int’l, Inc., 589 F.Supp.2d 505, 511 (D.Del.2008).
Although the record in Power Integrations does not clearly describe the nature of the infringing conduct (e.g., sale, manufacture, or sample testing as part of the design process) in relation to the foreign sales activities, see, e.g., 711 F.3d at 1370-71, what is clear is that both the district court and this court found the connection insufficient. Such an approach merely applies the sensible requirement that there be an appropriate connection between the infringing activity and the resulting lost sales. See Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1546 & n. 5 (Fed.Cir.1995) (en banc) (explaining that damages for “remote consequences” of patent infringement “are not compensa-ble,” and noting disagreement with the dissent on “where those lines are to be drawn”); cf. F. Hoffmann-La Roche Ltd. v. Empagran S.A., 542 U.S. 155, 166, 124 S.Ct. 2359, 159 L.Ed.2d 226 (2004) (indicating it is not “reasonable to apply [American antitrust] laws to foreign conduct insofar as that conduct causes independent foreign harm and that foreign harm alone gives rise to the plaintiffs claim”) (emphasis modified). In contrast to the tenuous connection between infringement and harm in Power Integrations, see 711 F.3d at 1371-72, the majority does not question WesternGeco’s assertion that “but for ION’s sales to its customers, WesternGeco would have earned over $90 million dollars in profit from the ten lucrative services contracts performed abroad.” Maj. Op. at 1349.
In any event, Power Integrations is distinguishable because the patentee in that case could presumably have protected itself from the foreign manufacture, sale, and use by obtaining patents abroad. See Deepsouth Packing, 406 U.S. at 531, 92 S.Ct. 1700 (“[T]he wording of 35 U.S.C. §§ 154 and 271 reveals a congressional intent to have [the patentee] seek [protection] abroad through patents secured in countries where his goods are being used.”); see also Microsoft, 550 U.S. at 456, 127 S.Ct. 1746 (“If AT & T desires to prevent copying in foreign countries, its remedy today lies in obtaining and enforcing foreign patents.”). Such reasoning loses much of its force where the extraterritorial activity takes place or could take place entirely on the high seas. See Maj. Op. at 1349 (“The service contracts were all to be performed on the high seas, outside the jurisdictional reach of U.S. patent law.”); see also J.A. 10151 (“international waters”); id. at 1182 (“high seas”). See generally United States v. Louisiana (The Louisiana Boundary Case), 394 U.S. 11, 23, 89 S.Ct. 773, 22 L.Ed.2d 44 (1969) (“Outside the territorial sea are the high seas, which are international waters not subject to the dominion of any single nation.”); WesternGeco L.L.C. v. Ion Geophysical Corp., 776 F.Supp.2d 342, 370 (S.D.Tex.2011) (“[A]ctivities in the [Exclusive Economic Zone] do not occur within the territory of the United States for purposes of U.S. patent law.”).
For similar reasons, concerns that extraterritorial application of U.S. patent law could result in double recovery (e.g., by parallel suits brought under the patent laws of more than one country based on the same infringing act) or possibly interfere with foreign sovereignty are of minimal relevance here. Where components of a patented invention are supplied from one country and used exclusively on the high seas, it may be that no country’s patent *1361 laws reach the conduct occurring in international waters absent a provision such as § 271(f). See, e.g., Duchesne, 60 U.S. (19 How.) at 196 (“[T]he high seas [are] out of the jurisdiction of the United States.”); Ocean Sci. & Eng’g, Inc. v. United States, 595 F.2d 572, 574 (Ct.Cl.1979) (It is uncertain whether Congress intended the patent laws to apply “to processes carried out on U.S. flag ships and planes at sea.”). See generally Equal Emp’t Opportunity Comm’n v. Arabian Am. Oil Co., 499 U.S. 244, 265, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) (Marshall, J., dissenting) (“[T]he law of the flag state ordinarily governs the internal affairs of a ship.”) (emphasis added) (internal quotation marks and citation omitted), superseded by statute on other grounds, Civil Rights Act of 1991, Pub.L. No. 102-166, § 109, 105 Stat. 1071, 1077, as recognized in Arbaugh v. Y & H Corp., 546 U.S. 500, 513 n. 8, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); Gardiner v. Howe, 9 F. Cas. 1157, 1158 (C.C.D.Mass.1865) (No. 5219) (“[Patent] jurisdiction extends to the decks of American vessels on the high seas....”) (emphasis added); Restatement (Third) of Foreign Relations Law § 502(2) (1987) (“The flag state may exercise jurisdiction to prescribe, to adjudicate, and to enforce, with respect to the ship or any conduct that takes place on the ship.”) (emphasis added).
The greater concern, therefore, is not the possibility of recovering too much, but the possibility that patent owners will be unable to obtain full compensation, as may well be the import of the majority’s holding today. Under the majority’s view of damages, plaintiffs such as WesternGeco who are the victims of proven infringement and who have sustained damages caused by the defendant’s activity in the United States may not be able to fully recover even if they obtain patent rights abroad.[3] No legislative history shows Congress intended to leave such patentees with an incomplete remedy.
The majority points out that § 271(f) is not broader than § 271(a),[4] that “liability attaches in the United States,” and that “[i]t is the act of exporting the component from the United States which creates the liability.” Maj. Op. at 1351; see also 35 U.S.C. § 271(b), (f)(1), (f)(2) & (g) (indicating who “shall be liable as an infringer”). The question here, however, is not whether “the export of a finished product can[ ] create liability for extraterritorial use of that product,” Maj. Op. at 1350, but instead, what is the proper measure of damages given a finding of liability. Infringement has been consistently addressed at the various stages of the proceeding, and the majority acknowledges the role of foreign activities in the infringement determi *1362 nation under the statute. Id. at 1347-48. The jury found ION infringed under § 271(f)(1) and (2), and that it did so willfully. The district court denied ION’s Renewed Motion for Judgment as a Matter of Law and Alternative Motion for New Trial Regarding Non-Infringement, and this court now affirms “the infringement finding with respect to (f)(2) [as] an adequate basis for liability.” Id. at 1348. The question of whether ION is liable for infringement has been answered in the affirmative.
The majority states “§ 271(f) was designed to put domestic manufacturers who export components to be assembled into a final product in a similar position to domestic manufacturers who sell the final product domestically.” Id. at 1351; see also S.Rep. No. 98-663, 98th Cong., 2d Sess., at 3 (1984) (“The bill simply amends the patent law so that when components are supplied for assembly abroad to circumvent a patent, the situation will be treated the same as when the invention is ‘made’ or ‘sold’ in the United States.”). It asserts “Qjjust as the United States seller or exporter of a final product cannot be liable for use abroad, so too the United States exporter of the component parts cannot be liable for use abroad.” Maj. Op. at 1351.
However, the cases from which the majority apparently draws this conclusion do not hold that foreign use can never be considered when calculating damages resulting from domestic infringement. In Microsoft, 550 U.S. 437, 127 S.Ct. 1746, see Maj. Op. at 1349-50, the Court found no infringement under § 271(f); it did not address the issue of damages. Similarly, in Halo Electronics, Inc. v. Pulse Electronics, Inc., 769 F.3d 1371, 1380 (Fed.Cir.2014), see Maj. Op. at 1351, this court found the defendant’s “activities in the United States were insufficient to constitute a sale within the United States to support direct infringement,” and did not reach the issue of damages with respect to those non-sales. Finally, the Supreme Court in Duchesne, 60 U.S. (19 How.) at 193-94, 198, see Maj. Op. at 1351, found no infringement based on the extraterritorial use of an improved gaff on a foreign sailing vessel that was temporarily present in Boston harbor.
Duchesne actually undermines the majority’s assertion that damages for domestic manufacture cannot take into account value from use on the high seas. The Duchesne Court specifically stated that if the patented invention “had been manufactured on [the vessel’s] deck while she was lying in the port of Boston, or if the captain had sold it there, he would undoubtedly have trespassed upon the rights of the plaintiff, and would have been justly answerable for the profit and advantage he thereby obtained.” Duchesne, 60 U.S. (19 How.) at 196 (emphasis added). Significantly, the Court noted “[t]he chief and almost only advantage which the defendant derived from the use of this improvement was on the high seas.” Id. The Court thus concluded that where domestic manufacture leads to “profit and advantage” on the high seas, the defendant is answerable for that profit. Id.
Unsurprisingly, this court has indicated damages under § 271(f) may be based on lost foreign sales. In Union Carbide Chemicals & Plastics Technology Corp. v. Shell Oil Co., this court held the district court “was in error” when it “prohibited Union Carbide from submitting evidence of Shell’s foreign sales for the purpose of recovering additional damages under 35 U.S.C. § 271(f)(2).” 425 F.3d 1366, 1378 (Fed.Cir.2005), overruled on other grounds by Cardiac Pacemakers, 576 F.3d 1348. Although this court sitting en banc overruled Union Carbide, it did so on the basis that the export of a catalyst for use abroad *1363 in a patented method did not infringe under § 271(f) because the catalyst was not a “component” as required by the statute, and because “[§ ] 271(f) does not apply to method patents.” Cardiac Pacemakers, 576 F.3d at 1363 n. 4, 1365. It left undisturbed Cardiac Pacemakers’ holding that evidence of foreign sales is relevant to the damages determination where infringement is found under § 271(f). See id. at 1365 (“We therefore overrule [Union Carbide ] to the extent that it conflicts with our holding today....”) (emphasis added).
In Promega, decided after Cardiac Pacemakers, this court confirmed that worldwide sales are relevant to the damages determination under § 271(f), i.e., that Union Carbide’s holding with respect to the relevance of foreign sales remains good law. 773 F.3d at 1350-51. This court noted the “jury awarded lost profits ... based on worldwide sales ... under 35 U.S.C. § 271(f)(1).” Id.; see also W.R. Grace & Co. v. Intercat, Inc., 60 F.Supp.2d 316, 321 (D.Del.1999) (“[Pjlaintiff is entitled to damages [under § 271(f) ] based on Intercat’s international sales.”). Although this court vacated the damages award because “the challenged claims of four of the five asserted patents on which the jury based its damages verdict are invalid,” it did not preclude the district court on remand from again considering worldwide sales as part of a renewed damages calculation. Promega Corp., 773 F.3d at 1358. To the contrary, Promega acknowledged the presumption “against the extraterritorial application” of the patent laws, but found that “Congress’ chosen language [in § 271(f) ] assigns liability to [the defendant’s] conduct within the United States, based on its extraterritorial effect.” Id. at 1353 n. 10 (emphasis added). The majority does not attempt to distinguish Cardiac Pacemakers or Promega,[5]
It is true some Federal Circuit decisions have stated lost profits are unavailable where the patentee does not sell its product in the United States. See, e.g., Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co., 895 F.2d 1403, 1406 n. 2 (Fed.Cir.1990) (“Because Lindemann did not compete in the sale of its invention in the United States, it did not, as it could not, seek damages on the basis of lost profits.”); Trell v. Marlee Elecs. Corp., 912 F.2d 1443, 1445 (Fed.Cir.1990) (“Because Trell did not sell its invention in the United States, he could not seek damages on the basis of lost profits.”). In these cases, however, the defendants’ conduct appears to have taken place in the United States and no exports were at issue. They therefore stand only for the proposition that there can be no lost profits where the patentee would not have made sales in any event. See King Instruments, 65 F.3d at 951 n. 5 (“In Trell and Lindemann ... the record does not show that the patentee sold any product in the United States. The patentee had no possible basis for a lost profits claim. These cases, like others, reflect the general rule that lost profits are recoverable only if demonstrated by adequate evidence in the record.”). In this case, the district court found “WesternGe-co presented sufficient evidence for the jury reasonably to find that it had the capability to exploit the demand,” i.e., that but for the infringement, WesternGeco would have made additional sales. J.A. 34.
For these reasons, the majority’s near-absolute bar to the consideration of a pat- *1364 entee’s foreign lost profits is contrary to the precedent both of this court and of the Supreme Court. I therefore respectfully dissent in part.

. The majority overreads Dowagiac. Maj. Op. at 1351-52. Dowagiac declined to impose liability for downstream foreign sales because the defendant was the downstream seller rather than the U.S. manufacturer and its "infringement consisted only in selling the drills after they passed out of the makers’ hands.” 235 U.S. at 650, 35 S.Ct. 221. That is, the defendant — who was comparable not to ION but to ION’s customers — did not infringe as to the products sold to foreign buyers. In the present action, WesternGeco is not bringing suit against the downstream sellers, and the issue is not infringement, but damages.

. The majority
see[s] no basis for extending § 271(f)(2) to cover lost profits resulting from the use abroad, of U.S. manufactured goods or components thereof in light of the 'particular force’ of the presumption against extraterritoriality in our patent laws.
Certainly in drafting 271(f)(2), Congress did not provide for liability in convoyed-sales situations.
Maj. Op. at 1352 (emphases added) (citation omitted). In so stating, the majority elides three important issues. First, by categorizing the damages as “resulting from ... use abroad,” it assumes without analysis that there is an insufficient connection between ION’s proven infringement in the United States and damages (see discussion of Power Integrations, infra). Second, it fails to consider that the Supreme Court in Goulds’ did not rely on an explicit authorization of Congress to award damages based upon activities occurring overseas. Third, by using the term "liability,” the majority’s statement ignores the critical distinction between whether a defendant is liable and the amount for which a defendant is liable. In any event, Congress stated whoever violates § 271(f) "shall be liable as an infringer.” 35 U.S.C. § 271(f)(1) & (2). Under this court’s precedents, the extent of liability for infringement, in appropriate cases, is determined by considering the sale of non-infringing products or services. See generally King Instruments, 65 F.3d at 947 ("Section 284 imposes no limitation on the types of harm resulting from infringement that the statute will redress.”).

. Even if every country applies the law of the flag to prohibit vessel-based activities in international waters that are claimed in a patent issued by that country, it may be difficult for United States patentees to predict, at the time of patenting, either the flag that future vessels are likely to fly or the countries in which future contracts are likely to be “negotiated and signed.” Maj. Op. at 1352. This difficulty in prediction distinguishes patents related to activities on the high seas from those obtained in the more common situation where businesses can attempt to predict the need for patenting in a given country based upon factors such as population size or historical market demand. See Deepsouth Packing, 406 U.S. at 531, 92 S.Ct. 1700 ("[T]he wording of 35 U.S.C. [§ 271] reveals a congressional intent to have [the patentee] seek [protection] abroad through patents secured in countries where his goods are being used.”) (emphasis added).

. Of course, § 271(f) is broader than § 271(a) in that it reaches the supply of "all or a substantial portion of the components of a patented invention.” 35 U.S.C. § 271(f)(1) (emphasis added); see also Microsoft, 550 U.S. at 458 n. 18, 127 S.Ct. 1746 (explaining how § 271(f), "in one respect, reach[es] past the facts of Deepsouth ”).

. The majority distinguishes Union Carbide on the basis that it addressed "[t]he extent to which ... royalties may be affected by lost profits suffered abroad,” while the present matter does not. Maj.- Op. at 1351 n. 7. The majority offers no explanation as to why lost foreign sales should be relevant when calculating damages based on a reasonable royalty, but not when calculating damages based on lost profits.